UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BENGE,<br><br>        Plaintiff,<br><br>    v.<br><br>OFFICE DEPOT, LLC, et al.,<br><br>        Defendants. | No. 2:24-cv-00749-DJC-SCR<br><br><br>ORDER |

    Plaintiff Christopher Benge brings his Fourth Amended Class Action Complaint against his former employers, Defendants Office Depot, LLC, Office Depot, Inc., and the ODP Corporation, alleging that Defendants violated various California Labor Code provisions and California's Unfair Competition Law by requiring him to work off the clock without compensation and denying him meal and rest breaks.  The Court previously granted dismissal of these claims but gave Plaintiff a final chance to amend his complaint.  Defendants now seek dismissal of all of Plaintiff's claims without leave to amend, arguing Plaintiff has once again failed to adequately plead his claims.

    For the reasons set forth below, the Court finds that Plaintiff has sufficiently complied with the Court's prior guidance and that his claims are now sufficiently pled.  Accordingly, the Cort declines to dismiss Plaintiff's Fourth Amended Complaint.

**BACKGROUND**

## I. Factual Background

Plaintiff worked for Defendants as an hourly-paid, non-exempt Sales Advisor and Service Advisor from April 2022 to April 2023. (*See* Fourth Am. Class Action Compl. ("FAC") (ECF No. 39) ¶¶ 5, 21.) Defendants are retailers in the business of operating and providing products and services through their retail stores and online platforms to sell office related services and supplies. (*Id.* ¶ 25.) Plaintiff alleges that Defendants violated California's Labor Code and various Wage Orders of the Industrial Welfare Commission by: (1) failing to pay overtime; (2) failing to provide meal breaks; (3) failing to provide rest breaks; (4) failing to pay the minimum wage; (5) failing to pay all unpaid wages upon discharge; and (6) failing to provide accurate wage statements. (*Id.* ¶¶ 58–115.) Plaintiff also alleges that Defendants violated California's Unfair Competition Law ("UCL") based on the predicate Labor Code violations. (*Id.* ¶¶ 116–22.)

## II. Procedural Background

Plaintiff first filed his Class Action Complaint in Placer County Superior Court. (*See* ECF No. 1.) Following removal to this Court, Defendants filed a motion to dismiss. (*See* ECF No. 8.) Prior to any ruling on that motion, Plaintiff filed his First Amended Class Action Complaint (ECF No. 12), which was replaced by his Second Amended Class Action Complaint following the Parties' joint stipulation (*see* ECF Nos. 13–14, 16).

Defendants again moved to dismiss Plaintiff's claims. (ECF No. 17.) The Court granted dismissal, finding Plaintiff had not adequately met the pleading standard set forth in *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014), *as amended* (Jan. 26, 2015), but granted Plaintiff leave to amend his claims. (ECF No. 25.) Plaintiff filed his Third Amended Class Action Complaint on September 3, 2024. (ECF No. 26.)

////

1  Defendants moved to dismiss Plaintiff's amended claims on September 24, 2024, arguing Plaintiff had failed to adequately plead his claims pursuant to the Court's guidance in its prior dismissal order. (ECF No. 29.) The Court agreed, granting dismissal on February 3, 2025. (Dismissal Order (ECF No. 36).) However, the Court found that, "given Plaintiff's efforts thus far to meet the concerns expressed in the Court's prior order, the Court will grant Plaintiff one final chance to sufficiently state a claim . . . ." (*Id.* at 1.) Plaintiff was ordered to file an amended complaint within 30 days. (*Id.* at 13.)

Plaintiff filed his operative Fourth Amended Complaint on March 6, 2025. Defendants filed a Motion to Strike or Dismiss Plaintiff's Fourth Amended Complaint on March 20, 2025, arguing Plaintiff's Fourth Amended Complaint was filed after the 30-day deadline imposed by the Court, and that Plaintiff's claims were still inadequately pled. (Mot. Strike or Dismiss (ECF No. 40).) The matter was submitted without oral argument pursuant to Local Rule 230(g) on May 23, 2025. (ECF No. 44.)

**LEGAL STANDARD**

**I.   Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), a court may strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). When considering a motion to strike, the court views the pleading in the light most favorable to the nonmoving party and will "resolve[ ] any doubt as to the relevance of the challenged allegations or sufficiency of a defense" in the nonmoving party's favor. *Id.* Ultimately, the decision as to whether to strike allegations "lies within the sound discretion of the district court." *Id.*

////

////

## II. Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief[,]" the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *See id.* This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

## ANALYSIS

## I. Motion to Strike

Defendants seek to strike Plaintiff's entire Fourth Amended Complaint on the basis that it was filed on March 6, 2025, a day later than the 30-day deadline imposed in the Court's prior Dismissal Order. (Mot. Strike or Dismiss at 9–11 (explaining Plaintiff's deadline to file an amended complaint was March 5, 2025).) Defendants do not present any other basis to strike the Fourth Amended Complaint.

////

1    The Court does not find any reasonable basis to strike Plaintiff's claims here
2    given that Defendants' request is based not on the merits or relevance of the
3    allegations of the Fourth Amended Complaint, but solely on the timeliness of the
4    filing, and Defendants have not shown any prejudice from the late filing.  Accordingly,
5    the Court declines to strike the Fourth Amended Complaint.

**II.    Motion to Dismiss**

This Court has previously set forth the pleading standards for Plaintiff's claims in detail.  (*See* Dismissal Order at 3–12.)  For the sake of judicial economy, the Court incorporates that discussion here and will only retread those standards as needed.

Having reviewed the allegations in Plaintiff's Fourth Amended Complaint, the Court finds Plaintiff has sufficiently amended his claims to comply with *Landers* and this Court's prior guidance.  Accordingly, as discussed further below, the Court declines to dismiss Plaintiff's claims.

### A.    Plaintiff's Unpaid Overtime Claim is Adequately Pled

As this Court previously explained, "[c]onsistent with *Landers*, to state a claim for overtime wages, a plaintiff must sufficiently identify tasks for which they were not paid and plausibly allege that they worked for more than the statutory period without compensation." (Dismissal Order at 6.)  The Court previously found the allegations in Plaintiff's Third Amended Complaint insufficient under this standard, reasoning:

> Plaintiff alleges the type of work he performed off-the-clock, that he was required to perform this work on an approximately daily basis, that he worked approximately 5 days a week, and that he worked approximately 45–73 hours per two-week pay period.  Plaintiff also generally alleges he worked over 8 hours a day and 40 hours a week during his employment with Defendants.  However, these allegations fail to provide sufficient detail to infer that Plaintiff is owed overtime wages for his time worked off-the-clock.  For example, assuming based on Plaintiff's allegations that he worked for 73 hours over 10 days in 2-week period, Plaintiff would have only worked an average of 7.3 hours a day or 36.5 hours a week.  Accordingly, if Plaintiff was only required to perform a few minutes of off-

5

the-clock work each day, Plaintiff would not necessarily be entitled to overtime wages.

(*Id.* at 6–7 (citations omitted).) In particular, the Court noted that Plaintiff neither "provide[d] details regarding his typical work schedule," nor "provide[d] an estimate of the amount of time he spent on uncompensated tasks." (*Id.* at 7–8.) Without these details, the Court held that it could not "plausibly infer Plaintiff experienced overtime wage violations." (*Id.* at 8.)

Plaintiff has remedied these faults in his Fourth Amended Complaint. Plaintiff now alleges his approximate work schedule for each of the pay periods he worked during his period of employment, April 2022 through April 2023, and estimates that he spent approximately 5–10 minutes per day performing work off-the-clock. (FAC ¶¶ 33, 45.) Plaintiff also alleges he was:

> [R]equired to work in excess of eight (8) hours per day and/or forty (40) hours per week as a result of performing off-the-clock work, including but not limited to on the following dates and/or pay periods: June 19, 2022; August 5, 2022; August 24, 2022; December 22, 2022; December 23, 2022, and December 24, 2022. On or about those dates, Plaintiff worked in excess of eight (8) hours in a day or approximately five (5) to ten (10) minutes short of 8 hours. Therefore, Plaintiff was not compensated overtime at least on these dates for the 5-10 minutes of off-the-clock work performed.

(*Id.* ¶ 63.)

The Court finds that these allegations comply with the standard set forth in *Landers*, which provides that, "in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that [he] worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." 771 F.3d at 644–45 (collecting cases). For example, Plaintiff alleges that, from July 31, 2022, through August 13, 2022, he "worked a total of approximately 10 shifts," and "[f]or each of these shifts, [he] was scheduled to work,

and did work, in excess of approximately 5 to 7-8 hours per day." (FAC ¶ 45(h).) In particular, he alleges that on August 5, 2022, he worked in excess of 8 hours and was not compensated for the 5–10 minutes of off-the-clock work he performed. (*Id*. ¶ 63.) Construing these allegations in Plaintiff's favor, the Court can reasonably infer that Plaintiff worked over 8 hours in a day and/or 40 hours in a week during that pay period, entitling him to overtime wages.

Accordingly, the Court declines to dismiss Plaintiff's claim for overtime wages.

**B.   Plaintiff's Minimum Wage Claim is Adequately Pled**

Concerning Plaintiff's minimum wage claim, the Court previously held that, "[t]o allege a minimum wage claim under *Landers*, a plaintiff must, at minimum, allege their hourly wages paid and the amount of off-the-clock work required in order to demonstrate their wages paid fell below the applicable minimum wage." (Dismissal Order at 8.) The Court dismissed Plaintiff's claim finding that, "although Plaintiff has alleged information regarding his hourly pay rates, and has alleged the applicable minimum wage rates from 2020 through 2024, he has not estimated the amount of time spent on his off-the-clock tasks" which was "insufficient to support a conclusion that Plaintiff was paid less than the minimum wage in violation of California law." (*Id*. at 9 (citations omitted).)

As with Plaintiff's overtime claim, Plaintiff has amended this claim in light of the Court's guidance to now allege his work schedule for each of the applicable pay periods and allege that he spent approximately 5–10 minutes per day performing work off-the-clock. (FAC ¶¶ 39, 45.) Specifically, Plaintiff alleges that for each of his shifts, he and other employees were "paid zero wages for at least approximately 5–10 minutes . . . for their time assisting customers while off-the-clock, including but not limited to, while entering and/or exiting the building, before clocking in, or after clocking out." (*Id*. ¶ 45(z).) Plaintiff further alleges he was "informed that he could not clock out later than his scheduled shift time unless he received pre-approval from a supervisor as it could result in disciplinary action, up to and including, termination of

7

employment" and was required to clock out during meal and rest breaks, but was "not compensated for work performed after his scheduled hours, during his meal breaks, and/or or during his unpaid rest breaks, including but not limited to, helping customers or responding to work related inquiries from managers/supervisors . . . ." (*Id.* ¶ 39.)

The Court finds these allegations minimally sufficient to state a claim, as Plaintiff has now pled that he regularly performed work off-the-clock, explained what that work was, estimated how much time he worked off-the-clock, provided his approximate work schedule, and stated he was uncompensated for that time. As other courts have held, under *Landers*, "plaintiffs are required to do more than present conclusory statements that they, and class members, were paid less than minimum wage in violation of California law. This burden may be met with allegations addressing as the hourly wages paid and the amount of off-the-clock work required." *Barajas v. Blue Diamond Growers Inc.*, No. 1:20-cv-0679-JLT-SKO, 2022 WL 1103841, at *12 (E.D. Cal. Apr. 13, 2022). Plaintiff has met that burden here. *See e.g., Brum v. MarketSource, Inc.*, No. 2:17–cv–241–JAM–EFB, 2017 WL 2633414, at *2 (E.D. Cal. June 19, 2017) (finding that allegations that plaintiff had to "perform between 10 to 15 minutes of off-the-clock work during meal breaks, three to four times per week" were sufficient to state minimum wage claim); *cf. Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1008 (N.D. Cal. 2016) (declining to conclude that plaintiffs' minimum wage or overtime claims were plausible without "basic facts," where there were "no allegations about what period of time or type of conduct [p]laintiffs are counting as hours worked"); *Edwards v. Costco Wholesale Corp.*, No. EDCV21716MWFKKX, 2021 WL 3130043, at *5 (C.D. Cal. July 23, 2021) (dismissing minimum wage claim because plaintiff provided "no context regarding how many minutes or hours Plaintiff allegedly worked off the clock, or how often it allegedly happened").

////

////

Defendants argue that this claim should be dismissed because "Plaintiff alleges that his base rate of pay was $16.00 per hour from April 2022 to July 2022 and $17.00 per hour from July 2022 to April 2023," and "[d]uring that period, [the] minimum wage was between $15.00 and $15.50," indicating "Plaintiff has not [sufficiently] demonstrated how the alleged off-the-clock work caused his hourly rate–admittedly $1 to $2 above the minimum wage–to fall below the minimum wage." (Mot. Strike or Dismiss at 13.) However, having carefully reviewed the applicable law, the Court notes that California law is more protective of minimum wage violations than federal law appears to be. In particular, the "averaging method" allowed under the Fair Labor Standards Act – which permits a court to average hours worked by the amount paid in a pay period "to assess" whether there was a violation of the federal minimum wage floor – is not allowed under California law. See *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005). Rather, "[c]ompliance with [California's] minimum wage law is determined by analyzing the compensation paid for each hour worked . . . ." *Sheppard v. N. Orange Cty. Reg'l Occupational Program*, 191 Cal. App. 4th 289, 297 n.5 (2010). California courts decline to apply the FLSA's averaging method because "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." *Armenta*, 135 Cal. App. 4th at 324. In other words, "California law does not permit employers to shift wages paid in one period to wages paid in another period" such that "workers must receive the minimum wage for *each hour worked* during the payroll period." *Rhea v. Gen. Atomics*, 227 Cal. App. 4th 1560, 1574 (2014) (emphasis in original). Thus, Plaintiff may be entitled to recover damages for his uncompensated hours, even in weeks where his total compensation exceeds the number of hours worked times the minimum wage. *See, e.g., Maravilla v. Rosas Bros. Constr.*, 401 F. Supp. 3d 886, 898 (N.D. Cal. 2019). The Court declines to dismiss the minimum wage claim on that basis at this stage.

Finally, Defendants argue that Plaintiff has failed to "plead any facts sufficient to establish that Defendant had knowledge of the alleged off-the-clock work that

9

resulted in alleged unpaid wages," an "essential element of an off-the-clock claim under California law." (Mot. Strike or Dismiss at 13–14.) It is true that, to ultimately prevail on an off-the-clock claim, a plaintiff must prove that the employer knew of his alleged off-the-clock work. *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007) (granting summary judgment in favor of employer when plaintiff failed to submit evidence that the employer had actual or constructive knowledge he worked off-the-clock). Here, however, Plaintiff alleges that he was required to perform off-the-clock work "at the instruction of managers'/supervisors', and/or in order to comply with Defendants' policies." (FAC ¶ 33.) The Court finds this sufficient at this early stage to infer Defendants' knowledge, particularly given that Defendants have cited no authority suggesting Plaintiff is required to include allegations indicating Defendants' actual or constructive knowledge of his off-the-clock work at the pleadings stage.

In short, the Court declines to dismiss Plaintiff's minimum wage claim.

### C. Plaintiff's Meal and Rest Break Claims are Adequately Pled

The Court previously dismissed Plaintiff's meal and rest break claims, finding that Plaintiff "failed to substantiate his allegations that he did not receive all required meal and rest breaks" by "alleg[ing] the approximate frequency of missed breaks," or by "sufficiently plead[ing] a single instance in which he was required or pressured to forgo his meal and rest breaks." (Dismissal Order at 11.) The Court found that "Plaintiff's general allegations that Defendants 'intentionally and willfully' 'failed to authorize or permit' or 'impeded and discouraged' Plaintiff and the other class members from taking their meal and rest periods, fail[ed] to sufficiently allege how Defendants prevented Plaintiff from taking the required breaks." (*Id.*) The Court further held that, "[w]hile Plaintiff need not allege each violation by Defendants, consistent with *Landers*, Plaintiff must plausibly allege he was denied meal and rest breaks in some specific instances." (*Id.* at 11–12.) Thus, the Court found Plaintiff's claims lacking as he had "failed to state the approximate frequency of missed meal

and rest breaks, explain how he was impeded from taking his meal and rest breaks, or allege facts specifically identifying an instance where [he] was deprived of a meal or rest break." (*Id.* at 12.)

      Plaintiff has largely remedied these faults in his Fourth Amended Complaint. Notably, Plaintiff now provides far more detail concerning his shift lengths and missed meal and rest breaks during each of the pay periods, thereby identifying the approximate frequency of missed meal and rest breaks as well as specific instances when he was denied meal and rest breaks. (*See* FAC ¶ 45; *see also id.* ¶ 74 (listing dates Plaintiff received insufficient meal breaks); *id.* ¶ 87 (listing dates Plaintiff received insufficient rest breaks).) For example, between May 8, 2022, and May 21, 2022, Plaintiff alleges that he "worked a total of approximately nine (9) shifts, and for "[a]pproximately 8 out of 9 shifts, [] was scheduled to work, and did work, in excess of seven (7) hours per day." (*Id.* ¶ 45(b).) However, Plaintiff alleges that, "[i]ncluding but not limited to, on 5/9/22 and 5/21/22, Plaintiff was not provided, authorized, and/or permitted to take a full, uninterrupted , off-duty thirty (30) minute meal breaks (e.g., Plaintiff did not take and was not clocked out for a full 30 minutes despite working in excess of a 7 hour shift and 6.5 hour shift respectively)" and "did not receive any meal or rest premium payments during this pay period." (*Id.*) This added level of detail lends far more plausibility to Plaintiff's claims and puts Defendants on fair notice of Plaintiff's allegedly insufficient breaks.

      In addition, while Plaintiff does not add substantial detail addressing how he was prevented from taking his breaks, he now alleges he was "required to clock in and out for the start of his shift, the end of his shift, and [for] his meal and rest breaks located in the back of the building" and "was required to speak to and assist customers before he clocked in or after he clocked out." (*Id.* ¶ 33.) Plaintiff alleges this off-the-clock work occurred "regularly before his scheduled shifts, after his shifts, and during his meal and rest breaks" and that he was "not compensated for work performed after his scheduled hours, during his meal breaks, and/or or during his

11

unpaid rest breaks, including but not limited to, helping customers or responding to work related inquiries from managers/supervisors." (*Id.*) Finally, Plaintiff alleges he "was informed that he could not clock out later than his scheduled shift time unless he received pre-approval from a supervisor as it could result in disciplinary action, up to and including, termination of employment." (*Id.*) While somewhat conclusory, the Court finds Plaintiff's allegations that he was "required" to perform off-the-clock work assisting customers and responding to supervisors' queries, and was threatened with disciplinary action if he did not clock out in a timely manner, are minimally sufficient to demonstrate how and why Plaintiff was impeded from taking his breaks.

Accordingly, the Court will not dismiss Plaintiff's meal and rest break claims.

### D. **Plaintiff's Remaining Claims are Adequately Pled**

As previously noted, Plaintiffs claims for failing to pay timely wages upon discharge (i.e., waiting time penalties), failing to provide accurate wage statements, and unfair competition are derivative of Plaintiff's overtime wage, minimum wage, and meal and rest break claims. (*See* Dismissal Order at 4; ECF No. 25 at 7–9.) Thus, to the extent these remaining claims are predicated on those underlying violations, they are sufficiently pled.

In addition, Defendants challenge the sufficiency of Plaintiff's allegations concerning their failure to pay timely wages and failure to provide accurate wage statements. (Mot. Dismiss or Strike at 18–20.) However, Plaintiff has pled he was not timely paid his final wages when he was discharged in April 2023. (FAC ¶ 103.) Plaintiff has also pled he and other employees were provided with incomplete and inaccurate wage statements given that the wage statements did not accurately reflect the number of hours worked and wages earned. (*Id.* ¶¶ 42, 111.) Plaintiff further alleges that Defendants "implemented an unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiff and the other class members," and that such "rounded time entries were inputted into Defendants' payroll system from which wage statements were created intended to pay

12

Plaintiff and the other class members less than their actual hours worked." (*Id.* ¶ 45(aa).) These allegations, coupled with the allegations discussed above concerning Defendants' failure to pay all regular and/or overtimes wages, are sufficient at this stage. Accordingly, the Court will not dismiss Plaintiff's waiting time penalty and wage statement claims at this juncture.

Finally, Defendants argue Plaintiff's claim under the California UCL should be dismissed because Plaintiff does not adequately plead that he lacks an adequate legal remedy under *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020). (Mot. Dismiss or Strike at 20–24.) As this Court has previously explained, while "[c]ourts have differed somewhat as to what *Sonner* mandates at the pleading stage," "[m]ost district courts applying *Sonner* in the Ninth Circuit have 'understood it to require that a plaintiff must, at a minimum, plead that she lacks adequate remedies at law if she seeks equitable relief.'" *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 839–40 (E.D. Cal. 2024) (quoting *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021)). Here, Plaintiff alleges that he and the "other class members have been personally injured by Defendants' unlawful business acts and practices as alleged herein, including but not necessarily limited to the loss of money and/or property." (FAC ¶ 121.) This is sufficient at this stage under *Sonner*.

Accordingly, the Court finds that Plaintiff's waiting time penalty, wage statement, and UCL claims are sufficiently pled.

## CONCLUSION

Accordingly, for the reasons set forth above, Defendants' Motion to Strike or Dismiss (ECF No. 40) is DENIED. Defendants are ordered to file an answer or other responsive pleading within twenty-one (21) days of this Order.

Dated: June 3, 2025

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

13